# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ernesto Manuel Mejia,<br><br>　　　　Petitioner,<br><br>v.<br><br>B. Hudson,<br><br>　　　　Respondent. | No. CV-24-00306-TUC-JCH (JR)<br><br>**REPORT AND RECOMMENDATION** |

Before the Court is Petitioner Ernesto Manuel Mejia's ("Petitioner") Petition Under 28 U.S.C. § 2241 for Writ of Habeas Corpus by a Person in Federal Custody ("Petition"). (Doc. 1.) Respondent filed Respondent's Return and Answer to Petition For a Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Answer"). (Doc. 8.) Petitioner filed his Reply in Opposition to Return and Answer ("Reply"). (Doc. 10.) This matter is referred to United States Magistrate Judge Jacqueline Rateau for Report and Recommendation pursuant to Local Rule 72.1 and 72.2 of the Local Rules of Civil Procedure. (Doc. 4.)

As more fully set forth below, the undersigned recommends that the district court, after an independent review of the record, dismiss the Petition.

**BACKGROUND**[1]

Petitioner is serving a 240-month term of imprisonment in the custody of the Federal Bureau of Prisons ("Bureau") for Conspiracy to Participate in a Racketeering Enterprise in violation of 18 U.S.C. § 1962(D). (Doc. 8-1 at p. 7, ¶ 18.) Respondent represents that Petitioner's final statutory release date is August 15, 2028 "via good time credit [.]" *Id.* Respondent also represents that "[w]ith the application of 365 days of [Fist Step Act[2] ("FSA")] time credit Petitioner's projected release date from Bureau custody is August 16, 2027." *Id.*

By way of background, Respondent sets out that Petitioner's eligibility for FSA time credit was reviewed on September 22, 2020. (Doc. 8-1 at p. 7, ¶ 19.) At that time, Petitioner was determined eligible to earn FSA time credit. *Id.* Respondent represents that Petitioner, having a low recidivism risk, is eligible to have his earned time credit applied toward prerelease custody or his supervised release term. *Id.* at ¶¶ 19-20.

Respondent represents that as of January 29, 2024, Petitioner had earned 490 of FSA time credit. (Doc. 8-2 at p. 3, ¶ 10.) Respondent also represents that "[a]n additional 241 days were provisionally included as a shorthand calculation for future potential [FSA time credit], for a possible total of 713 days," Petitioner has a recommended community confinement placement date of August 15, 2025. *Id.* at ¶¶ 10-11. Respondent represents that "[t]his equates to the FSA release date of August 16, 2027, less 490 earned [FSA time credit days] and 241 discretionary days." *Id.* at ¶ 11.

---

[1] Unless otherwise indicated, all factual references are taken from the exhibits attached to Respondent's Answer.
[2] (Public Law 115-391)

Respondent represents that as the August 15, 2025 community confinement placement date gets closer, the Bureau will recalculate Petitioner's sentence to account for the actual number of FSA time credit that Petitioner has earned since his initial community confinement placement referral on January 29, 2024. (Doc. 8-2 at p. 4, ¶ 12.)

## PETITION, ANSWER AND SUMMARY OF CONCLUSION

Petitioner raises one ground for relief in his Petition claiming:

> Under *Ramirez v. Phillips* [ . . .] the official policy is invalid (523.44(b)) and should be set aside because it changed the command "shall earn," "shall be applied," and "shall transfer" in 18 U.S.C. 3632(d)(4)(A)(C) to "the Bureau may apply FSA time credits" which is causing Petitioner the deprivation of applying about 360 FSA time credits that will have been applied.

(Doc. 1 at p. 4.) Petitioner alleges that "[i]n early 2023" the Bureau applied his FSA time credit "which reduced his projected release date from August 15, 2028 to August 15, 2027[]" and "[t]he remaining earned time credits[—]some 490 days[—]were applied to pre-release custody transfer on or about November of 2023." *Id*. He alleges that "[a]t that time, [his] date to release to pre-release custody was/is August 15, 2025." *Id*.

Petitioner urges that "between November of 2023 and August of 2025[, he] is still earning 15 days per month per FSA time credits that are suppose (*sic*) to be applied mandatorily per 3632(d)(4)(C)." *Id*. He contends that "[b]ecause the [Bureau] already submitted the paperwork to secure the August 15, 2025 date, this in turn does not allow [him] to apply the credits that are being earned between November of 2023 to August 15, 2025 which accounts to about 360 FSA time credits." *Id*. He insists that "[t]his is because the [Bureau] believes 523.44(b) gives it the discretion to withhold application of those 360 days of FSA time credits." *Id*.

- 3 -

Respondent seeks dismissal of the Petition on several grounds. First, Respondent seeks dismissal on the grounds that Petitioner failed to exhaust his administrative remedies. (Doc. 8 at pp. 5-7.) Second, Respondent urges that the district court lacks jurisdiction to review the Bureau's individual FSA time credit determination. *Id*. at pp. 7-9. Third, Respondent urges that the district court lacks the authority to compel discretionary Bureau action. *Id*. at pp. 9-10. Fourth, Respondent insists that Petitioner does not have a liberty interest in his FSA time credit. *Id*. at pp. 10-11. Lastly, Respondent contends the Petition fails on the merits. *Id*. at pp. 11-12.

As more fully set forth below, this Court finds that the district court has jurisdiction to consider the Petition. This Court also finds that Petitioner's admitted failure to exhaust his administrative remedies should not be excused.[3] Thus, this Court recommends that the district court dismiss the Petition.

…

---

[3] As more fully explained *infra*, Petitioner's allegations in his Petition concern the Bureau's application of his FSA time credit. Petitioner's Reply raises an allegation concerning the Bureau's application of time credit earned under the Second Change Act of 2008, not the FSA. This Court finds that Petitioner's claims concerning the application of his time credit under both the FSA and the Second Chance Act of 2008 must first be addressed by the Bureau and recommends dismissal for Petitioner's failure to exhaust his administrative remedies. Thus, this Court does not reach Respondent's claims that Petitioner does not have a liberty interest in his FSA time credit, that the district court lacks the authority to compel discretionary Bureau action and that the Petition fails on the merits.

However, were this Court to reach Respondent's claims that Petitioner does not have a liberty interest in his FSA time credit and that the district court lacks the authority to compel discretionary Bureau action, this Court would find that Petitioner does not have a liberty interest in his FSA time credit and that the district court lacks the authority to compel discretionary Bureau action. *See Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979) (holding that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."); *Thigpen*, 2024 WL 1705256, at *3 (holding that a petitioner seeking judicial application of his FSA time credit is not entitled to judicial relief because "the challenged decision is committed to the discretion of the B[ureau].").

**FSA TIME CREDIT**

Enacted into law in December 2018, the FSA addresses the reentry of incarcerated individuals into society. *Thigpen v. Heisner*, CV 23-01359-PHX-ROS (CDB), 2024 WL 1705256, at *2 (D. Ariz. Mar. 4, 2024), *report and recommendation adopted*, No. CV-23-01359-PHX-ROS, 2024 WL 1702275 (D. Ariz. Apr. 19, 2024). The application of earned FSA time credit to create an earlier release date for an eligible prisoner is governed by statute. *See* 18 U.S.C. §§ 3624(g) and 3632(d)(4)(C).

FSA time credit can only be applied to create an earlier release date for an eligible prisoner if the prisoner, *inter alia*: "(A) has earned time credits under the risk and needs assessment system . . . in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment; [and] (B) has shown through the periodic risk reassessments a demonstrated recidivism risk reduction or has maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment . . ." 18 U.S.C. § 3624(g)(1)(A)(B); *see also* 28 C.F.R. § 523.44(b)(1)-(2). If a prisoner meets the eligibility criteria, the Bureau "may transfer [a prisoner who has been sentenced to serve a term of supervised release after imprisonment] to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of earned FSA time credit. 18 U.S.C. § 3624(g)(3); *see also* 28 C.F.R. § 523.44(d) (directing that "[t]he [Bureau] may apply [FSA time credit] toward early transfer to supervised release under 18 U.S.C. § 3624(g) . . ."). Any remaining FSA time credit earned—beyond 12 months in the case of a prisoner who has been sentenced to a term of supervised release—are to be applied toward time in pre-release custody, which includes community confinement placement. *See* 18 U.S.C. §

3632(d)(4)(C); *see also* 28 C.F.R. § 523.44(b)(c) (directing that "[t]he Bureau may apply [FSA time credit] toward prerelease custody . . .").

## ANALYSIS

**Subject Matter Jurisdiction**

Respondent contends that the district court lacks subject matter jurisdiction to review the Bureau's FSA time credit determination. (Doc. 8 at pp. 5-7.) Respondent urges that Petitioner's claim that the Bureau wrongfully refused to apply his earned FSA time credit towards prerelease custody challenges the Bureau's decision making authority provided to it under 18 U.S.C. § 3624 and insists that that judicial review of such decisions are precluded under 18 U.S.C. § 3625.

The Petition claims that "the official policy is invalid (523.44(b)) and should be set aside because it changed the command 'shall earn,' 'shall be applied,' and 'shall transfer' in 18 U.S.C. § 3632(d)(4)(A)(C) to 'the Bureau may apply FSA time credits' which is causing Petitioner the deprivation of applying about 360 FSA time credits that will have been applied." (Doc. 1 at p. 4.) Petitioner requests that the district court grant him "[a] writ of habeas corpus invalidating 28 CFR § 523.44(b) and directing application of additional FSA time credits." *Id*. at p. 9. In his Reply, Petitioner urges that he "did not file an action under 5 U.S.C. Section 702, et seq.[4]" and insists that "Respondent's efforts to bend a 28 U.S.C. Section 2241 petition into something it never was[] are misplaced." (Doc. 10 at p. 2.)

---

[4] The Administrative Procedures Act. *See* 5 U.S.C. 701, *et seq*.

"Federal inmates have two avenues for pursuing habeas corpus relief." *Davenport v. Birkholz*, No. CV-23-01362-PHX-DJH (DMF), 2023 WL 9686338, at *3 (D. Ariz. Dec. 27, 2023), *report and recommendation adopted*, No. CV-23-01362-PHX-DJH, 2024 WL 639987 (D. Ariz. Feb. 15, 2024). "Review of the execution of a sentence may be had through a petition for a writ of habeas corpus under 28 U.S.C. § 2241." *United States v. Giddings*, 740 F.2d 770, 772 (9th Cir. 1984). A habeas petition challenging the "manner, location or condition of a sentence's execution" must be brought pursuant to 28 U.S.C. § 2241. *Davenport*, 2023 WL 9686338, at *3 (quoting *Hernandez v. Campbell*, 204 F.3d 861, 864 (9th Cir. 2000)). A district court must "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243.

"Although the district court does not have subject matter jurisdiction to review individualized, discretionary determinations made by the [Bureau], judicial review is available for allegations that [Bureau] action is contrary to established federal law, violates the United States Constitution, or exceeds the B[ureau]'s statutory authority." *Chatmon v. Fed. Bureau of Prisons*, No. CV-20-02291-PHX-RCC (CDB), 2021 WL 11421799, at *5 (D. Ariz. Apr. 7, 2021), *report and recommendation adopted*, No. CV-20-02291-PHX-RCC, 2021 WL 2533469 (D. Ariz. June 21, 2021) (citing *Close v. Thomas*, 653 F.3d 970, 973-74 (9th Cir. 2011); *Reeb v. Thomas*, 636 F.3d 1224, 1228 (9th Cir. 2010)). *See also Davenport*, 2023 WL 9686338, at *4 n. 6 (recognizing the district court's jurisdiction in § 2241 proceedings to decide whether Bureau's actions comported with established federal

- 7 -

law, the United States Constitution, or were within its statutory authority and rejecting the respondent's argument that the Administrative Procedures Act and the district court's lack of authority to review Bureau discretionary decisions undermined the district court's § 2241 jurisdiction); *Barnes v. Smith*, No. CV-11-02413-PHX-DGC, 2012 WL 2590494, at *3 (D. Ariz. July 3, 2012) (recognizing that "[j]udicial review remains available for allegations that B[ureau] action is contrary to established federal law, violates the United States Constitution, or exceeds its statutory authority.").

The Petition here is brought under 28 U.S.C. § 2241 and sufficiently alleges that the Bureau's action is contrary to federal law. (Doc. 1 at p. 4.) *See Chatman*, 2021 WL 11421799 at *5 (finding district court had jurisdiction over § 2241 petition where petition challenged the manner of the execution of his sentence (the application of prior custody days)). In light of the foregoing caselaw, this Court finds that the district court has jurisdiction over the Petition.

This Court recommends that the district court conclude that it has subject matter jurisdiction to consider the Petition.

**Dismissal for Failure to Exhaust Administrative Remedies**

Respondent requests dismissal of the Petition because Petitioner did not exhaust his administrative remedies. (Doc. 8 at pp. 5-7.) Petitioner admits that he did not exhaust his administrative remedies. (Doc. 1 at pp. 2-3.) Petitioner claims that he did not exhaust his administrative remedies because exhaustion would be futile. (Doc. 1 at p. 3; Doc. 10 at p. 1.)

As a prudential matter, courts require a habeas petitioner to exhaust available

administrative remedies before filing a petition for relief under 28 U.S.C. § 2241. *See e.g., Reno v. Koray*, 515 U.S. 50, 54–55 (1995); *Tucker v. Carlson*, 925 F.2d 330, 332 (9th Cir. 1991); *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1986); *Ruviwat v. Smith*, 701 F.2d 844, 845 (9th Cir. 1983). The United States Court of Appeals for the Ninth Circuit has recognized that:

> [T]he requirement of exhaustion of remedies [is to] aid judicial review by allowing the appropriate development of a factual record in an expert forum; conserve the court's time because of the possibility that the relief applied for may be granted at the administrative level; and allow the administrative agency an opportunity to correct errors occurring in the course of administrative proceedings.

*Ruviwat,* 701 F.2d at 845.

An inmate's failure to exhaust administrative remedies has been excused for futility where the Bureau has officially predetermined an issue or where resolution of a claim can be accomplished based solely on statutory interpretation. *See Martinez v. Gutierrez*, No. CV 22-00505-TUC-RM (AMM), 2023 WL 6466490, at *3 (D. Ariz. July 14, 2023), *report and recommendation adopted*, No. CV-22-00505-TUC-RM, 2023 WL 6464850 (D. Ariz. Oct. 4, 2023) (finding administrative exhaustion futile where the petitioner raised a facial challenge to the Bureau's implementation of the statutes and regulations governing application of an inmate's FSA time credit and it appeared "very likely that the outcome of any further appeals to the Regional Director or the Office of General Counsel would have been consistent with the adverse decisions."); *Johnston v. Colbert*, No. CV-22-0260-TUC-SHR (EJM), 2023 WL 9510557, at *3 (D. Ariz. Aug. 15, 2023), *report and recommendation adopted*, No. CV-22-00260-TUC-SHR, 2024 WL 418123 (D. Ariz. Feb.

5, 2024) (excusing inmate's failure to exhaust in § 2241 action where the petitioner was seeking relief with respect to the application of FSA time credit where "the factual record is adequately developed, and nothing in the record suggests that further administrative review would aid judicial review.")

This Court finds that Petitioner's claim can be resolved at the administrative level. As result, Petitioner's failure to exhaust his administrative remedies should not be excused. Petitioner's underlying allegation in his Petition concerns the Bureau's individual application of his FSA time credit toward pre-release custody. (Doc. 1 at p. 4.)

As laid out above, Petitioner claims that "[i]n early 2023, the [Bureau] applied [his] FSA time credit[] which reduce his projected release date from August 15, 2028 to August 15, 2027." (Doc. 1 at p. 4.) Petitioner claims that "[t]he remaining earned time credit[s] some 490 days were applied to pre-release custody transfer on or about November 2023." *Id*. He insists that, "[a]t that time, [his] date to release to pre-release custody was/is August 15, 2025[]" and that, ". . . between November of 2023 and August of 2025[,] [he] is still earning 15 days per month per FSA time credit[] that are supposed to be applied mandatorily per 3632(d)(4)(C)." Petitioner further insists that since the Bureau "already submitted the paperwork to secure the August 15, 2025 date, this in turn does not allow Petitioner apply the credits that are being earned between November of 2023 to August 15, 2025[,] which accounts (*sic*) to about 360 (*sic*) FSA time credits." *Id*.

Respondent claims that Petitioner "miscalculated his total earned" FSA time credit and the Bureau "could have reviewed his miscalculation with him and explained it to him through the" administrative review process. (Doc. 8 at p. 7, n. 5.) Respondent urges that

had Petitioner initiated and exhausted his administrative remedies, his claim could have been formally reviewed and, if necessary, corrected without judicial intervention. *Id*. at p. 7.

In his Reply, Petitioner urges that "Respondent fails to elaborate further that the 241 days for 'shorthand' calculation are in truth Second Chance Act of 2008 days that are to be applied on top of FSA FTS's as per P.S. 5410.01 . . . in the actual manner that they were requested initially in the January 29, 2024 RCC Referral." (Doc. 10 at pp. 3-4.)

Respondent has not had an opportunity to first address Petitioner's allegation in his Petition that Petitioner's FSA time credit is improperly calculated. Nor has Respondent had an opportunity to address Petitioner's allegation concerning his 241 Second Chance Act[5] days that is made for the first time in his Reply. To be sure, Petitioner's allegation concerning these 241 Second Change Act days, raised for the first time in his Reply, are not the subject of his Petition. The sole subject of the Petition are Petitioner's claimed time credit earned under the FSA.

This Court notes that Respondent represents that Petitioner "[has the potential] for 241 [Seco]nd Chance Act days." (Doc. 8 at p. 4.) However, the document that Respondent relies upon in support of the assertion that Petitioner "has the potential'" for 241 Second

---

[5] The Second Chance Act of 2007 ("SCA") was signed into law on April 9, 2008. *See* 18 U.S.C. §§ 3621, 3624. The SCA sets forth standards by which the Bureau is required to make decisions concerning prisoner placement into Residential Re-Entry Centers. Under the SCA, the Director of the Bureau is required to "ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term, not to exceed 12 months, under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility." *Bruce v. Apker*, No. CV 08-619-TUC-FRZ (JCG), 2009 WL 2509170, at *1 (D. Ariz. Aug. 17, 2009) (quoting 18 U.S.C. § 3624(c)(1)).

Chance Act days does not contain the limiting "has the potential" language as Respondent represents. The document relied upon by Respondent reads, in relevant part, "[i]n addition, inmate has earned 490 days of FTC RCC and 241 2nd Chance Act days." (Doc. 8-2 at p. 16.)

This Court finds that Petitioner's allegation concerning the calculation of his FSA time credit along with his allegation contained in his Reply—that "the 241 days for 'shorthand' calculation are in truth Second Change Act of 2008 days that are to be applied on top of FSA FTS's per P.S. 5410.01"—must first be addressed by the Bureau at the administrative level.

In light of the facts of this case, this Court concludes that the administrative exhaustion requirement should not be waived and the Petition should be dismissed for Petitioner's failure to exhaust his administrative remedies.

## RECOMMENDATION

For the foregoing reasons, the Magistrate Judge **RECOMMENDS** that the district court, after its independent review, enter an order **ADOPTING** this Report and Recommendation and **DENYING** the Petition (Doc. 1).

Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and file written objections within fourteen days of being served with a copy of the Report and Recommendation. A party may respond to the other party's objections within fourteen days. No reply shall be filed unless leave is granted by the district court. If objections are not timely filed, they may be deemed waived. Failure to file timely objections to any factual or legal determination of the Magistrate Judge may be considered a waiver of a party's right

to *de novo* consideration of the issues. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). If objections are filed, the parties should use the following case number: **CV-24-306-TUC-JCH**.

Dated this 8th day of November, 2024.

*[Signature]*
Honorable Jacqueline M. Rateau
United States Magistrate Judge

- 13 -